EDOK - Application for Search Warrant (Revised 5/13)

# United States District Court
## EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| In the matter of the search of: IN THE MATTER OF THE SEARCH OF ONE GRAY CRICKET OVATION CELLULAR PHONE, ASSIGNED TELEPHONE NUMBER 918-758-7730 ASSIGNED THE IMEI: 86907204180011, CURRENTLY LOCATED AT THE FBI OFFICE IN MUSKOGEE, OKLAHOMA | Case No. 21-MJ-337-KEW |

## APPLICATION FOR SEARCH WARRANT

I, Ryan Crump, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the **EASTERN** District of **OKLAHOMA** (identify the person or describe the property to be searched and give its location):

SEE ATTACHMENT "A"

The person or property to be searched, described above, is believed to conceal (identify the person or describe the property to be seized):

SEE ATTACHMENT "B"

The basis for the search under Fed. R. Crim. P. 41(c) is (check one or more):

☒ evidence of a crime;
☒ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of Title __18__, United States Code, Section(s) __2252(a)(5)(B); 2252(b)(2); 2251(a); & 2251(e)__, and the application is based on these facts:

☐ Continued on the attached sheet.
☒ Delayed notice of ___30___ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

SA [signature]
Ryan Crump
Special Agent
Federal Bureau of Investigation

Sworn to before me and signed in my presence.

Date: August 16, 2021

[Judge's signature]

City and state: Muskogee, Oklahoma

UNITED STATES MAGISTRATE JUDGE
Printed name and title



IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF ONE GRAY CRICKET OVATION CELLULAR PHONE, ASSIGNED TELEPHONE NUMBER 918-758-7730 ASSIGNED THE IMEI: 86907204180011, CURRENTLY LOCATED AT THE FBI OFFICE IN MUSKOGEE, OKLAHOMA | Case No. _____ |

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, Ryan Crump, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I am a Special Agent ("SA") of the Federal Bureau of Investigation ("FBI"), where I have been employed since January 2018. I am an investigative officer, or law enforcement officer, of the United States of America within the meaning of Title 18, United States Code ("U.S.C."), Section 2510(7), that is an officer of the United States who is empowered by law to conduct investigations of, and make arrests for, offenses enumerated in Title 18. In the course of my duties as a Special Agent, I have investigated criminal violations related to Indian Country crimes, as explained in Title 18, U.S.C., Section 1151 and as it pertains to the Major Crimes Act ("MCA"). Further, I have investigated violent crimes, drug offenses, and child abuse crimes. I make this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—electronic device ("Target Device") —which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. The facts outlined in this Affidavit are based on events that transpired in the Eastern District of Oklahoma, in Indian Country. They are based on my personal observations, knowledge obtained from other law enforcement officers, my review of documents related to this investigation, conversations with others who have personal knowledge of the events and circumstances described herein, and a review of open-source information, including information available on the Internet. Since this Affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact I or others have learned during the course of this investigation.

3. Based on my training and experience and the facts as outlined in this Affidavit, there is probable cause to believe that violations of Title 18, United States Code, Section 2241(c), AGGRAVATED SEXUAL ABUSE; Title 18, United States Code, Sections 2252A(a)(5)(B) and (b)(2), POSSESSION OF CHILD PORNOGRAPHY; and Title 18, United States Code, Sections 2251(a) & 2251(e), SEXUAL EXPLOITATION OF A CHILD / USE OF A CHILD TO PRODUCE A VISUAL DEPICTION have been committed by ALEXANDER CHRISTIAN DAVIS ("**DAVIS**"). Accordingly, there is also probable cause to search the items described in Attachment A for evidence, instrumentalities, and/or fruits of these crimes further described in Attachment B.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

4. This Affidavit is submitted in support of a search warrant for a gray Cricket Ovation cellular phone, assigned telephone number 918-758-7730, assigned the international mobile equipment identity ("IMEI") number 86907204180011, hereinafter the "**The TARGET DEVICE**," which was seized from **DAVIS** on or about July 27, 2021, and is currently in

possession of the FBI at the FBI Office located at 120 South Edmond Place, Muskogee, Oklahoma 74403, in the Eastern District of Oklahoma, described in attachment A.

5. The applied-for warrant would authorize the forensic examination of **THE TARGET DEVICE** to identify electronically stored data, particularly described in Attachment B.

## PROBABLE CAUSE

6. VENUE: the facts and circumstances alleged in this Affidavit occurred within the Eastern District of Oklahoma. More specifically, based on the Supreme Court decision in *McGirt v. Oklahoma (2020)*, the below-described location is within the geographic boundaries of the MUSCOGEE NATION, a Federally recognized Indian Tribe, and therefore is within Indian Country.

7. On or about May 10, 2021, **DAVIS** was confirmed as a registered citizen of the Muscogee Nation. On or about May 11, 2021, A.B. was confirmed as a registered citizen of the Cherokee Nation.

8. On or about April 30, 2021, Muscogee Nation Lighthorse Police Department received a walk-in report from K. D. alleging child sexual abuse of her daughter, A.B. (minor), by **DAVIS**.

9. **DAVIS'** date of birth is August 23, 1986. A.B.'s date of birth is December 21, 2004.

10. On or about April 30, 2021, an Emergency Order of Protection[1] was issued by the District Court of Okmulgee County, State of Oklahoma, prohibiting contact between **DAVIS** and A.B.

11. On or about April 30, 2021, **DAVIS** was served a notice for the emergency Order of Protection by a deputy with the Okmulgee County Sheriff's Office, Okmulgee, Oklahoma.

12. On or about May 12, 2021, a continued Order of Protection was issued by the District Court of Okmulgee County, State of Oklahoma, prohibiting contact between **DAVIS** and A.B.

13. On or about July 28, 2021, a continued Order of Protection was issued by the District Court of Okmulgee County, State of Oklahoma, prohibiting contact between **DAVIS** and A.B.

14. On or about July 27, 2021, a Child/Adolescence Forensic Interviewer ("CAFI") interviewed A.B. A.B. disclosed that he/she was in contact with **DAVIS** at a Days Inn Hotel, located in Okmulgee, Oklahoma, on or about July 23, 2021, through July 24, 2021. A receipt obtained from Days Inn Hotel, 1221 South Wood Drive, Okmulgee, Oklahoma, revealed that room number 223 was registered to Alex Davis between July 20, 2021, and July 27, 2021. Additionally, telephone number 758-7730 was listed on the Days Inn Hotel receipt.

---

[1] Case number PO-2021-32.

15. A.B. disclosed that he/she had intercourse with **DAVIS** while at the Days Inn Hotel, on or about July 23 through July 24, 2021. Additionally, A.B. disclosed that Days Inn Hotel was selected because he/she was not allowed to see **DAVIS** due to the Protective Order.

16. On or about July 26, 2021, the FBI utilized administrative subpoena powers to obtain subscriber information and toll records for telephone number 918-758-7730. A review of the subpoenaed records revealed the following:

    a. Name: Alexander Davis

    b. Account number: 685187050

    c. Billing Address: 1343 E. 8th Street, Okmulgee, Oklahoma 74447[2]

    d. Activation date: 5/01/2021

17. On or about July 27, 2021, A.B. disclosed to the CAFI interviewer that he/she had a sexual relationship with **DAVIS** since he/she was approximately 15 years of age. Additionally, A.B. revealed that he/she communicated with **DAVIS** via text messaging and phone conversations. The sexual contact between A.B. and **DAVIS** always occurred in the residence shared between A.B. and **DAVIS** in Okmulgee, Oklahoma.

---

[2] Billing address listed on the subscriber information is the same address listed for Alex Davis in Protective Order P-2021-32.

18. On or about July 27, 2021, A.B. disclosed to the CAFI interviewer that he/she exchanged sexually explicit images with **DAVIS** via text messaging. Additionally, sexually explicit videos and pictures were captured on telephone devices operated by **DAVIS** and A.B.

19. On or about May 21, 2021, the FBI utilized administrative subpoena powers to obtain subscriber information and toll records for telephone number 918-752-8493. A review of the subpoenaed records revealed that K. D. was the subscriber for telephone number 918-752-8493. Additionally, based on open-source information and investigative interviews, Affiant believes telephone number 918-752-8493 was previously utilized by **DAVIS.**

20. On or about August 5, 2021, the FBI utilized administrative subpoena powers to obtain subscriber information and toll records for telephone number 918-863-3871. A review of the subpoenaed records revealed that K. D. was the subscriber for telephone number 918-863-3871. Affiant believes telephone number 918-863-3871 was utilized by A.B.

21. Between April 30, 2021, through May 13, 2021, telephone number 918-758-7730, believed to be associated with **DAVIS**, had approximately 33 bidirectional contacts with 918-863-3871, which was thought to be associated with A.B[3].

22. Between May 6, 2020, through July 24, 2021, telephone number 918-752-8493, previously associated with **DAVIS**, had approximately 2,395 bidirectional contacts with telephone number 918-863-3871, which was believed to be associated with A.B.

---

[3] Protective Order was issued against DAVIS within this timeframe prohibiting contact with A.B. Case number: PO-2021-32.

23. Between April 30, 2021, through May 13, 2021, telephone number 918-752-8493, previously associated with **DAVIS**, had approximately 33 bidirectional contacts with telephone number 918-863-3871, which was believed to be associated with A.B[4].

24. On or about July 27, 2021, a warrant was issued in the District Court of the Muscogee Nation, Okmulgee District, authorizing the arrest of **DAVIS** for Sexual Battery and Violation of Protective Order. Later that day, **DAVIS** was arrested by Muscogee Nation Lighthorse Police. **THE TARGET DEVICE** was seized incident to arrest.

## SEIZURE OF THE TARGET DEVICE

25. **THE TARGET DEVICE** is currently in the lawful possession of the FBI. It came into the FBI's possession in the following way: **THE TARGET DEVICE** was on **DAVIS** and seized during the execution of an arrest warrant for **DAVIS** on July 27, 2021. On July 28, 2021, **THE TARGET DEVICE** was transferred over to FBI custody. Although the FBI might already have all the necessary authority to examine **THE TARGET DEVICE**, the Affiant seeks this warrant out of an abundance of caution to ensure that an examination of **THE TARGET DEVICE** will comply with the Fourth Amendment and other applicable laws.

26. **THE TARGET DEVICE** is currently in the care and custody of the FBI located at 120 S. Edmond Place, Muskogee, Oklahoma 74403, which is in the Eastern District of Oklahoma. Based on my training and experience, I know that electronic devices can be operated remotely, including the capability of deleting digital information; therefore, **THE TARGET**

---

[4] Protective Order was issued against DAVIS within this timeframe prohibiting contact with A.B. Case number: PO-2021-32.

**DEVICE** was powered down and has remained powered down after being seized. Further, in my training and experience, I know that **THE TARGET DEVICE** has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when **THE TARGET DEVICE** first came into the possession of the FBI.

## TECHNICAL TERMS

27.     Based on my training and experience, I use the following technical terms to convey the following meanings:

28.     Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "landline" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the device's location.

29.     Digital camera: A digital camera is a camera that records pictures as digital picture files rather than by using photographic film. Digital cameras use a variety of fixed and removable

storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

30. Portable media player: A portable media player (or "MP3 Player" or "iPod") is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store vast amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

31. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records of the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can include records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains a highly accurate clock. Each satellite repeatedly transmits a mathematical representation of the current time by radio, combined with a unique sequence of numbers. These signals are sent by radio, using publicly available specifications. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer

connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

32. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments, or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the device's location.

33. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer may be appropriately directed from its source to its destination. Most Internet service providers control a range of IP addresses. For example, some computers have static—that is, long-term—IP addresses, while others have dynamic—that is, frequently changed—IP addresses.

34. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between

devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

35. Based on my training, experience, and research, I know that **THE TARGET DEVICE** has the capability that allows it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices such as this type can uncover, among other things, evidence that reveals or suggests who possessed or used the particular device.

36. Based on my training, experience, and research, I have reason to believe that the Target Devices has capabilities that allow it to serve as a wireless telephone. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the devices or maintain evidence related to the commission of a crime.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

37. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the devices. Therefore, this information can sometimes be recovered with forensic tools.

38. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Target

Devices were used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Target Devices because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to conclude how electronic devices were used, the purpose of their use, who used them, and when.

   d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is dynamic. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

  e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

39. *Nature of examination.* Based on the preceding and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the devices to human inspection to determine whether it is evidence described by the warrant.

40. *Manner of execution.* Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize the execution of the warrant at any time in the day or night.

41. *Methods of examination.* In conducting this examination, law enforcement personnel may use various methods to locate evidence and instrumentalities of the Subject Offense, including but not limited to undertaking a cursory inspection of all information within the Target Devices. This method is analogous to cursorily inspecting all the files in a file cabinet in an office to determine which paper evidence is subject to seizure. Although law enforcement personnel may use other methods, including keyword searches, I know keyword searches and similar methods are inadequate to detect all information subject to seizure. As an initial matter, keyword searches work only for text data. Yet, many types of files commonly associated with e-mails, including attachments such as scanned documents, pictures, and videos, do not store data as searchable text. Moreover, keyword searches cannot be relied upon to capture all relevant communications in an account, even as to text data. In advance, it is impossible to know all of the

unique words or phrases investigative subjects will use in their communications. Consequently, many communications in an account are often relevant to an investigation but do not contain keywords that an agent is likely searching for.

## CONCLUSION

42. I submit that this Affidavit supports the probable cause for a search warrant authorizing the examination of the Target Device described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

SA *[signature]*
Ryan Crump
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me, this 16th day of August 2021:

*[signature]*
_____
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

The property to be searched is a Cricket Ovation Cellular phone, assigned telephone number 918-758-7730, assigned the IMEI number 86907204180011, hereinafter "**THE TARGET DEVICE.**" **THE TARGET DEVICE** is currently located at the Muskogee office of the Federal Bureau of Investigation at 120 S. Edmond Place, Muskogee, Oklahoma 74403, in the Eastern District of Oklahoma.



**ATTACHMENT B**

1. All records on **THE TARGET DEVICE** described in Attachment A that relate to violations of Title 18, United States Code, Section 2241(c), AGGRAVATED SEXUAL ABUSE; Title 18, United States Code, Sections 2252A(a)(5)(B) and (b)(2), POSSESSION OF CHILD PORNOGRAPHY; and Title 18, United States Code, Sections 2251(a) & 2251(e), SEXUAL EXPLOITATION OF A CHILD / USE OF A CHILD TO PRODUCE A VISUAL DEPICTION and involved Alexander **DAVIS** since December 21, 2019, including:

   a. dialed outgoing telephone/pager numbers;
   b. incoming telephone/pager numbers;
   c. missed incoming telephone/pager numbers;
   d. numeric/alphanumeric messages sent or received;
   e. verbal messages sent or received;
   f. address and telephone/pager number listings;
   g. electronically composed memorandum;
   h. time and or data markings to include calendar format organization of all such data;
   i. phone book listings to include names, aliases, telephone/pager numbers, codes, types of phone numbers, and addresses;
   j. photos and videos;
   k. historical GPS locations;
   l. internet web browser history data;
   m. records of Internet Protocol addresses used; and
   n. records of Internet activity, including firewall logs, caches, browser history,

and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the preceding items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied under this warrant to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, including law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Under this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.